STATE OF NORTH CAROLINA v. ALAN BOYD, JR., Defendant

No. COA01-1155

(Filed 3 December 2002)

## 1. Drugs— cocaine—constructive possession in car

There was sufficient evidence of constructive possession of cocaine where the cocaine was found under the driver's seat of a car; defendant was riding in the front passenger seat; the only other person in the car testified that defendant was the only person who could have put the drugs where they were found; defendant behaved suspiciously when stopped by the police, reaching under the seat, moving about, and making it difficult for the police to search him; and, at one point, defendant stood alone by the passenger door.

## 2. Drugs— constructive possession—no acting in concert instruction

The State could rely on constructive possession in a prosecution for trafficking in cocaine by possession where the cocaine was discovered under the driver's seat of a car in which defendant was a passenger and the court did not instruct on acting in concert.

STATE v. BOYD

[154 N.C. App. 302 (2002)]

### 3. Firearms— constructive possession by felon—evidence sufficient

The evidence was sufficient to show that defendant, a felon, constructively possessed a firearm where the gun was found under the front passenger seat of a car, where defendant was sitting; the only other person in the car was the driver; the driver and defendant did not have equal access to the gun; officers saw defendant reaching under the seat; the driver did not own the gun; and the gun had been seen at defendant's mother's house.

### 4. Constitutional Law— double jeopardy—possession of cocaine with intent to sell—trafficking by possession

Convictions for possession of cocaine with intent to sell and distribute and trafficking in the same cocaine by possession did not violate double jeopardy.

Appeal by defendant from judgments entered 23 May 2001 by Judge Claude S. Sitton in Gaston County Superior Court. Heard in the Court of Appeals 12 June 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General John R. Corne, and Assistant Attorney General M. Janette Soles, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Jarvis John Edgerton, IV, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions for trafficking in cocaine by transport, possession of a firearm by a felon, possession with intent to sell and deliver cocaine, and trafficking in cocaine by possession. We find no error.

The evidence presented at trial tended to show the following: On 25 April 1998, Ledell Cole ("Mr. Cole"), a relative of the defendant, picked the defendant up and drove him to Sharon, South Carolina, in Mr. Cole's 1973 Chevy Impala. The two men went to church, then to defendant's mother's home, and then returned to Gastonia, North Carolina. On the morning of 28 April 1998, Mr. Cole drove the defendant to Charlotte, and dropped him (defendant) at the motel where defendant lived and worked. Mr. Cole returned to pick up defendant that evening. While he was waiting for defendant to finish his work,

Mr. Cole left the car and walked up the hill some distance to speak with another man. When Mr. Cole returned to the car, defendant was standing at the car with the door open. The two men got into the car and Mr. Cole drove to Gastonia with the defendant in the front passenger seat.

At approximately 9:41 that evening, Gastonia Police Officer Mike McKenzie observed Mr. Cole's Impala heading west on Long Avenue in that city and followed it. Officer McKenzie saw the car switch from the left lane to the center lane, cutting off and almost hitting a car in the center lane. Officer McKenzie then activated his blue lights and stopped the car.

Officer McKenzie testified:

As I was asking Mr. Cole for his license and registration, I noticed Mr. Boyd, the passenger, was nervous, acting unusually nervous. He had his hands under his legs and was reaching toward the end of the seat area in front of him. I asked him several times to put his hands where I could see them. One time he did raise them up where I could see them and then shortly thereafter he put them back in the same view as if he was trying to reach for something under the seat.

After the second time, Officer McKenzie went over to the defendant's side of the car. "I ordered Mr. Boyd to step out of the car. As he was stepping out of the car he was reaching with his left hand up underneath the passenger area of the seat. At that time I pulled my weapon out and ordered him out of the car." Officer McKenzie then radioed for backup.

Officer McKenzie searched the defendant for weapons and found a switchblade knife concealed in the defendant's right front pocket. The patrol car's videotape of the stop shows Mr. Cole, while still in the car, dropping out of the view of the camera and then rising back up into view. After backup officers arrived, they again noticed Mr. Cole dropping out of view and ordered him out of the car. Upon searching the car, the officers found a plastic bag containing cocaine under the driver's seat and a loaded .45 caliber handgun under the passenger's seat. They placed both men under arrest.

Mr. Cole pled guilty to attempted trafficking in cocaine, possession with intent to sell and deliver cocaine, maintaining a place for the purpose of keeping, selling or manufacturing cocaine, and carrying a concealed weapon. In return for his guilty pleas and his agree-

ing to testify against the defendant, Mr. Cole received a suspended sentence.

On 2 November 1998, the grand jury returned indictments charging the defendant with carrying a concealed weapon, trafficking in cocaine by transport, possession of a firearm by a felon, possession with intent to sell and deliver cocaine, and trafficking in cocaine by possession. The defendant pled not guilty, but on 23 May 2001 a jury convicted defendant on all charges. The court imposed a consolidated sentence of imprisonment for a minimum of 96 months and a maximum of 116 months. Defendant appeals.

The defendant raised eight assignments of error in the Record on Appeal, but in his brief he brings forward only numbers one and two. In his argument, defendant first contends that the trial court erred in not dismissing all charges, on the grounds that the evidence was insufficient as a matter of law to support a conviction on any of the offenses charged. However, defendant offers no argument concerning the conviction for carrying a concealed weapon—the switchblade knife found in his pocket. Thus, he has abandoned all of his issues as to that conviction. *See* N.C. R. App. Proc. 28(b)(5) (2001) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

**[1]** "In ruling on a motion to dismiss, the issue before the trial court is whether substantial evidence of each element of the offense charged has been presented, and that defendant was the perpetrator of the offense. If the trial court so finds, the motion is properly denied." *State v. Carr*, 122 N.C. App. 369, 371-72, 470 S.E.2d 70, 72 (1996) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Patterson*, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585 (1994) (citations and quotation marks omitted). "[I]f the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence." *State v. Matias*, 354 N.C. 549, 551, 556 S.E.2d 269, 270 (2001) (citation and quotation marks omitted). Therefore, we analyze the evidence to determine if, in the light most favorable to the State, the evidence was substantial enough on all necessary elements for the court to submit the charges to the jury.

Defendant contends that the evidence presented by the State was insufficient as a matter of law to prove that he possessed cocaine, a necessary element of the drug charges against him. *See* N.C. Gen. Stat. 90-95(a)(1) (2001) (possession with intent to sell or deliver cocaine); N.C. Gen. Stat. 90-95(h)(3) (2001) (trafficking in cocaine by transportation or possession). "Possession of controlled substances may be either actual or constructive." *Carr*, 122 N.C. App. at 372, 470 S.E.2d at 73. Here, the State relied upon the doctrine of constructive possession because there was no evidence presented that the defendant actually possessed the drugs in question.

"Evidence of constructive possession is sufficient to support a conviction if it would allow a reasonable mind to conclude that defendant had the intent and capability to exercise control and dominion over the controlled substance." *State v. Matias*, 143 N.C. App. 445, 448, 550 S.E.2d 1, 3 (1988), *aff'd*, 354 N.C. 549, 556 S.E.2d 269 (2001). "Where contraband is found on premises under the control of the defendant, that in itself is sufficient to go to the jury on the question of constructive possession." *State v. Peek*, 89 N.C. App. 123, 126, 365 S.E.2d 320, 322 (1988). "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989).

This Court has noted that "the mere presence of the defendant in an automobile in which illicit drugs are found does not, without more, constitute sufficient proof of his possession of such drugs." *State v. Weems*, 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976) (citation and quotation marks omitted). In *Weems*, the defendant was in the passenger seat of a car stopped by the police. Packets of heroin were found hidden in the car in three locations, two of which were in close proximity to the defendant. This Court found "no evidence of any circumstance connecting the defendant to the drugs in any manner whatsoever other than the showing of his mere presence for a brief period in the car as a passenger." *Id.* at 571, 230 S.E.2d at 195.

In *Matias*, a package containing marijuana and cocaine was found in the rear seat of a vehicle with several passengers. *See Matias*, 354 N.C. at 551, 556 S.E.2d at 270. The arresting officer testified that in his opinion, the defendant was the only person in the vehicle who could have placed the drugs in the location where they were discovered. *See id.* at 552, 556 S.E.2d at 271. The evidence further

showed that the defendant was in the vehicle for approximately twenty minutes and that there was a noticeable odor of marijuana in the vehicle. *See id.* Viewed in the light most favorable to the State, the Court held that there were sufficient incriminating circumstances to support an inference of defendant's constructive possession of the drugs. *See id.* at 553, 556 S.E.2d at 271.

Here, the State presented evidence through the testimony of Ledell Cole that the defendant was the only person who could have placed the drugs where they were found. In *Matias*, there were four people in the car where the drugs were found, but here only Mr. Cole and the defendant were present. The evidence also showed that when Mr. Cole walked back to the car, defendant was standing alone by the open passenger door. The defendant also behaved suspiciously upon being stopped by the police, reaching under the seat of the car, moving about, and making it difficult for the police to search him. Viewing the evidence in the light most favorable to the State, we hold that the evidence was sufficient to support an inference that defendant constructively possessed the cocaine.

**[2]** The defendant argues further that in the absence of an instruction on acting in concert on the charge of trafficking in cocaine by transportation, the State was required to prove actual possession. We disagree. Although the trial court did not specifically explain the application of the law to the evidence presented in this case, the court was not required to do so. *See* N.C. Gen. Stat. 15A-1232 (2001). Defendant correctly states that "in the absence of an acting in concert instruction, the State must prove that the defendant committed each element of the offense." *State v. Wilson*, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996). The element at issue, however, is transportation. "[O]nly a person in the actual or constructive possession of [contraband], absent conspiracy or aiding and abetting, could be guilty of the unlawful transportation thereof." *State v. Wells*, 259 N.C. 173, 177, 130 S.E.2d 299, 303 (1963) (emphasis added). We find no merit to the argument that in the absence of an instruction on acting in concert, the State could not rely upon constructive possession to prove the element of transportation.

**[3]** Similarly, defendant argues that the evidence was insufficient to show that he constructively possessed a firearm, a necessary element of the charge of possession of a firearm by a felon. *See* N.C. Gen. Stat. 14-415.1 (2001). Possession of a firearm may also be actual or constructive. *See State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). "A person has constructive possession of an item when

the item is not in his physical custody, but he nonetheless has the power and intent to control its disposition." *Id.*

Upon direct examination, Mr. Cole testified:

Q. Mr. Cole, I am showing you State's Exhibit 7 which is a gun here. Have you ever seen this gun before?

A. Yes.

Q. Where have you seen this gun before?

A. I saw it down there at his mama's house.

Q. You saw this at whose mother's house?

A. Alan Boyd. I saw it down there at his mama's house.

Q. You have seen that gun at the Defendant's mother's house?

A. That's right.

Q. Was that before the two of you were arrested?

A. Yes, sir.

Q. How long before you two were arrested did you see that gun down at the Defendant's house, at his mother's house?

A. I saw it down there Sunday. He might have put it in my car then. I didn't know.

. . .

Q. Did you put the gun in your car?

A. No, sir.

Q. Could anybody else have put the gun in your car?

A. No, sir. Nobody else hadn't been in that car.

Q. Just you and the Defendant?

A. Me and the Defendant.

Officer Mike McKenzie testified, "I ordered [the defendant] to step out of the car. As he was stepping out of the car he was reaching with his left hand up underneath the passenger area of the seat." Officer McKenzie then radioed for backup. Officer Shane Caughey was one of the responding officers who subsequently searched the vehicle. He testified on direct examination:

Q. I show you what has been marked for identification purposes as State's Exhibit Number 7. Do you recognize that?

A. Yes, sir.

Q. And where do you recognize that from?

A. It was the .45 caliber handgun that I took out from under the passenger side of the seat of Mr. Cole's car.

. . .

Q. Now you say that you located that gun underneath the passenger seat. Where under the passenger seat? How far back was it and how far left to right was it?

A. It was midway up under the seat midway in the center of the seat. I've got note[s] about it being midway and completely out of view.

Q. So it would have been directly under the center of the passenger seat?

A. Directly under the center of the seat midway back between the front floorboard and the rear floorboard.

In *Alston*, this Court found insufficient evidence to support an inference of constructive possession of a firearm when the evidence showed that the gun was found lying on the console between the driver and the defendant, the driver and the defendant had equal access to the gun, and the gun was purchased and owned by the driver. *See Alston*, 131 N.C. App. at 519, 508 S.E.2d at 319. Here, the evidence tended to show that the driver and the defendant did not have equal access to the gun, which was under defendant's seat, and officers saw defendant reaching under that seat. The evidence also showed that the driver did not own the gun, and that the gun was seen earlier at the defendant's mother's house. We conclude that this evidence was sufficient to support an inference that defendant constructively possessed the firearm, and that the court did not err by refusing to dismiss the charge of possession of a firearm by a felon.

[4] Defendant next contends that the trial court's entry of judgment on the separate convictions of trafficking in cocaine by possession and possession of cocaine with intent to sell and deliver violate his constitutional rights against double jeopardy. *See* U.S. Const. Amend. V, U.S. Const. Amend. XIV, § 1. In support of his position, defendant

cites this Court's decision in *State v. Sanderson*, 60 N.C. App. 604, 300 S.E.2d 9 (1983), *disc. review denied*, 308 N.C. 679, 304 S.E.2d 759 (1983). In *Sanderson*, this court found that the constitutional guarantee against double jeopardy protects a defendant from multiple punishments for the same offense. *See id.* at 610, 300 S.E.2d at 14. To determine if a single act constitutes one or two offenses, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932)).

Building upon the *Sanderson* decision and on subsequent decisions, this Court decided in *State v. Mebane* that the principle of double jeopardy barred convictions for possession with intent to sell and deliver cocaine under N.C. Gen. Stat. 90-95(a)(1) and trafficking in the same cocaine by possession under N.C. Gen. Stat. 90-95(h)(3)— the same convictions here. *See State v. Mebane*, 101 N.C. App. 119, 124, 398 S.E.2d 672, 675 (1990); *see also State v. McGill*, 296 N.C. 564, 568, 251 S.E.2d 616, 619 (1979).

After *Sanderson*, the North Carolina Supreme Court held that the *Blockburger* test is "neither binding on state courts nor conclusive." *State v. Gardner*, 315 N.C. 444, 455, 340 S.E.2d 701, 709 (1986). Further, "when a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes, a trial court in a single trial may impose cumulative punishments under the statutes." *Id.* at 453, 340 S.E.2d at 708 (quoting *Missouri v. Hunter*, 459 U.S. 359, 74 L. Ed. 2d 535 (1983)). The *Mebane* Court was therefore obliged to determine what the legislature intended when it passed separate statutes against possession with intent to sell and deliver and trafficking by possession. The Court noted that both statutes were designed to deter distribution of cocaine, with the only difference being the amount distributed. *See Mebane*, 101 N.C. App. at 124, 398 S.E.2d at 678. Therefore, the Court determined that "the legislature did not intend that a defendant be punished for both of the statutory crimes in issue." *Id.*

However, our Supreme Court directly overruled *Mebane* in *State v. Pipkins*, 337 N.C. 431, 435, 446 S.E.2d 360, 363 (1994). The majority of a divided Court found that "[a]n examination of the subject, language and history of the statutes indicates that the legislature intended that these offenses be punished separately, even where the

offenses are based upon the same conduct." *Id.* at 434, 446 S.E.2d at 362. Thus, in light of *Pipkins*, we are bound to uphold the defendant's convictions for possession with intent to sell and distribute cocaine and trafficking in the same cocaine by possession.

No error.

Judges WYNN and CAMPBELL concur.